**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FORUSALL, INC.,** | |
| *Plaintiff,* | |
| **v.** | Case No. 22-cv-1551 |
| **UNITED STATES DEPARTMENT OF LABOR and MARTIN J. WALSH, in his official capacity as SECRETARY OF LABOR**, | Hon. Christopher R. Cooper |
| *Defendants.* | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

I.      Statutory Background .......................................................................................... 2

II.     Factual Background .............................................................................................. 5

III.    Procedural History ............................................................................................... 7

LEGAL STANDARD ....................................................................................................... 9

ARGUMENT .................................................................................................................. 10

I.      FORUSALL LACKS STANDING TO ASSERT ITS CLAIMS. ................................... 10

        A.      ForUsAll has failed to demonstrate a causal connection between its
                alleged injury and the challenged Release. ..................................................... 12

        B.      ForUsAll has failed to demonstrate that invalidation of the Release would
                remedy its purported injury ........................................................................... 15

II.     THE RELEASE DOES NOT CONSTITUTE FINAL AGENCY ACTION. ...................... 18

        A.      The Release does not represent the consummation of the Department's
                decisionmaking process. .................................................................................. 18

        B.      The Release does not give rise to direct and appreciable legal
                consequences. ................................................................................................... 20

III.    THE RELEASE IS NOT A SUBSTANTIVE RULE REQUIRING NOTICE AND COMMENT. ...... 24

CONCLUSION ............................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984) ............................................................................ 12, 13

*Appalachian Power Co. v. EPA,*
    208 F.3d 1015 (D.C. Cir. 2000) ...................................................... 20, 22, 24

*\*Bennett v. Spear,*
    520 U.S. 154 (1997) .................................................................................. 19

*Black v. LaHood,*
    882 F. Supp. 2d 98 (D.D.C. 2012) ...................................................... 13, 14, 15

*\*Cal. Cmtys. Against Toxics v. EPA,*
    934 F.3d 627 (D.C. Cir. 2019) ...................................................... 19, 20, 21, 22

*Citizens for Responsibility & Ethics in Wash. v. Trump,*
    302 F. Supp. 3d 127 (D.D.C. 2018) ........................................................... 9

*Cmty. for Creative Non-Violence v. Pierce,*
    814 F.2d 663 (D.C. Cir. 1987) ............................................................ 12, 14

*Connecticut v. Dep't of Interior,*
    344 F. Supp. 279 (D.D.C. 2018) ............................................................... 9

*County of Delaware v. Dep't of Transp.,*
    554 F.3d 143 (D.C. Cir. 2009) ................................................................ 16

*DRG Funding Corp. v. Sec. of Hous. & Urban Dev.,*
    76 F.3d 1212 (D.C. Cir. 1996) ............................................................ 19, 20

*Fla. Audubon Soc. v. Bentsen,*
    94 F.3d 658 (D.D.C. 1996) (en banc) ...................................................... 12, 15

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
    460 F.3d 13 (D.C. Cir. 2006) ................................................................. 22

*Gobeille v. Liberty Mut. Ins. Co.,*
    577 U.S. 312 (2016) ............................................................................... 2

*\*Hughes v. Northwestern University,*
    142 S. Ct. 737 (2022) ..................................................................... *passim*

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004) ................................................................. 22

*Jones v. La. State Bar Ass'n*,
   738 F. Supp. 2d 74 (D.D.C. 2010) ...................................................... 13, 14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................... 10, 12

*Massachusetts v. Mellon*,
   262 U.S. 477 (1923) ........................................................................... 16, 17

*Nat. Resources Def. Council v. Wheeler*,
   955 F.3d 68 (D.C. Cir. 2020) ................................................ 19, 20, 21, 23

*Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*,
   468 F.3d 826 (D.C. Cir. 2006) ................................................................. 13

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans' Affairs*,
   842 F. Supp. 127 (D.D.C. 2012) ............................................................... 9

*Nat'l Mining Ass'n v. McCarthy*,
   758 F.3d 243 (D.C. Cir. 2014) ................................................................. 21

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ................................................................................... 25

*POET Biorefining, LLC v. EPA*,
   970 F.3d 392 (D.C. Cir. 2020) ................................................................. 25

*Ramirez v. Blinken*,
   --- F. Supp. 3d ---, 2022 WL 1795080 (D.D.C. Mar. 22, 2022)......................... 9, 10

*Rattlesnake Coalition v. EPA*,
   509 F.3d 1095 (9th Cir. 2007) ................................................................. 18

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
   541 U.S. 1 (2004) ..................................................................................... 17

*Sandoval v. Dep't of Justice*,
   322 F. Supp. 3d 101 (D.D.C. 2018) ........................................................... 9

*Shalala v. Guernsey Mem'l Hosp.*,
   514 U.S. 87 (1995) ................................................................................... 25

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ..................................................................................... 2

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) ................................................................ 18

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ...................................................................... 12, 14

*Stegemann v. Gannett Co.*,
  970 F.3d 465 (4th Cir. 2020) ...................................................................... 3

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015) ...................................................................... 3

*\*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016) .............................................................. 20, 21, 24

*\*Valero Energy Corp. v. EPA*,
  927 F.3d 532 (D.C. Cir. 2019) .............................................................. 21, 22, 23

*Walsh v. Comey*,
  118 F. Supp. 3d 22 (D.D.C. 2015) ...................................................................... 9

*Williamson Cty. Reg. Planning Comm''n v. Hamilton Bank*,
  473 U.S. 172 (1985) ...................................................................... 19

## United States Code

5 U.S.C. § 553 ...................................................................... 1, 2, 8, 25
5 U.S.C. § 704 ...................................................................... 2, 18
5 U.S.C. § 706 ...................................................................... 8
29 U.S.C. § 1001 ...................................................................... 1
29 U.S.C. § 1002 ...................................................................... 3, 4
29 U.S.C. § 1101 ...................................................................... 2
29 U.S.C. § 1102 ...................................................................... 2
29 U.S.C. § 1104 ...................................................................... 3, 15, 17, 23
29 U.S.C. § 1109 ...................................................................... 4
29 U.S.C. § 1132 ...................................................................... 16, 17
29 U.S.C. § 1134 ...................................................................... 4, 17
29 U.S.C. § 1135 ...................................................................... 4

## Rules

Fed. R. Civ. P. 12 ...................................................................... 11, 18

iv

**Regulations**

*Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights*,
  86 Fed Reg. 57,272 (Oct. 14, 2021) ................................................................... 4, 5

*Ensuring Responsible Development of Digital Assets*,
  87 Fed. Reg. 14,143 (Mar. 9, 2022) ................................................................. 5, 6

**Regulations**

*Fee Disclosure Guidance*,
  Field Assistance Bulletin No. 2012-02R (July 30, 2012) .................................. 5

*Terminated Vested Participants Project Defined Benefit Plans*,
  Compliance Assistance Release 2021-01 (Jan. 12, 2021) .................................. 5

## INTRODUCTION

On March 10, 2022, the Department of Labor issued Compliance Assistance Release No. 2022-01 (the Release) concerning 401(k) plan investments in cryptocurrencies. *See* Exhibit A, hereto. The Release itself does not have the force of law nor does it make new law. It instead reminds fiduciaries of their duties under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*, as expressed in the statute and the Supreme Court's recent decision in *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022). Further, the Release informs fiduciaries that the Department has concerns with retirement plans offering investments in cryptocurrency, a novel and volatile asset class, and provides advance notice that the Department expects that it will initiate an investigative program regarding unspecified plans' offerings of cryptocurrency investment options to plan participants. But it does not preclude any plan from offering cryptocurrency investment options or interpret the duty of prudence to prohibit such actions.

Plaintiff ForUsAll, Inc. nevertheless faults the Department for providing this notice and brings this two-count complaint challenging the Release under the Administrative Procedure Act (APA). The complaint alleges that the Department and Secretary Walsh (together, the Department or Defendants) violated the APA by not submitting the Release for notice and comment under 5 U.S.C. § 553 and acted arbitrarily and capriciously by issuing the Release.

These claims are meritless and should be dismissed for a number of reasons. First, ForUsAll lacks standing to challenge the Release because it has not alleged facts showing

1

that the Release has caused ForUsAll's purported loss of business opportunities or that its requested relief would remedy this alleged injury. Second, the Release does not constitute final agency action, *see* 5 U.S.C. § 704, because it does not represent the consummation of the Department's decisionmaking process or create direct and immediate legal consequences for regulated entities. Third, and at a minimum, Count One alleging that the Department could issue the Release only after undergoing notice and comment should be dismissed because, by the plain terms of the APA, *see* 5 U.S.C. § 553(b)(3)(A), interpretative rules and general agency policy statements are exempt from such a requirement.

## **BACKGROUND**

### I.      **Statutory Background**

ERISA governs employee benefit plans, including retirement plans. *See* 29 U.S.C. § 1101(a); *Hughes*, 142 S. Ct. at 740. Its principal purpose is "to protect plan participants and beneficiaries." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 325 (2016). To that end, "[t]he statute imposes participation, funding, and vesting requirements" on covered plans, and it "also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) (citing 29 U.S.C. §§ 1021-1031, 1051-1086, 1101-1114).

Numerous individuals and entities can have fiduciary responsibilities with respect to an ERISA plan. They can include not only those who are named as fiduciaries in the plan instruments, 29 U.S.C. § 1102(a)(2), but also those who "exercise[] any discretionary authority or discretionary control respecting management of [an ERISA] plan," "render[]

investment advice for a fee or other compensation" to the plan or participants, or have "any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* § 1002(21). In practical terms, fiduciaries can be plan administrators and sponsors—among others.

ERISA fiduciaries must uphold a duty of prudence. Specifically, the statute requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). This "duty is 'derived from the common law of trusts,'" and it is "the highest known to the law." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). Determining how that duty applies in a particular situation or with respect to a particular type of plan often requires a fact-specific analysis. *See, e.g., id.* at 530-31; *Hughes*, 142 S. Ct. at 741-42; *Stegemman v. Gannett Co.*, 970 F.3d 465, 475 (4th Cir. 2020). But the Supreme Court has recognized that a fiduciary generally "has a continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble*, 575 U.S. at 530.

ERISA does not require employers to sponsor retirement plans or specify how they must be structured. But retirement plans generally fall into two buckets. Defined-benefit plans operate like traditional pensions whereby participants receive a benefit derived from an account that the participants do not control. 29 U.S.C. § 1002(35). With defined-contribution plans, however, "participating employees maintain individual investment accounts, which are funded by pretax contributions from the employees' salaries and, where applicable, matching contributions from the employer." *Hughes*, 142 S. Ct. at 740;

*see* 29 U.S.C. § 1002(34). Participants "choose how to invest [their] funds … from the menu of options selected by the plan [fiduciaries]," and the value of their accounts is determined by the performance of their chosen investments minus any applicable fees. *Hughes*, 142 S. Ct. at 740.

Fiduciaries must prudently and loyally select the options that appear on the plans' investment menus, and if they fail to comply with their fiduciary duties when selecting plan investment options, they may be personally liable. 29 U.S.C. § 1109; *see Hughes*, 142 S. Ct. at 742 (noting defined-contribution plan fiduciaries' duty "to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options"). Plan participants may sue to "recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1). Likewise, the Secretary may initiate a civil action against a plan fiduciary personally for breaching ERISA fiduciary duties. *Id.* § 1132(a)(2) (referencing 29 U.S.C. § 1109).

Additionally, ERISA grants the Secretary authority, "in order to determine whether any person has violated or is about to violate any provision of [ERISA] or any regulation or order thereunder," "to make an investigation, and in connection therewith to require the submission of reports, books, and records." *Id.* § 1134(a). ERISA further grants the Secretary authority to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of [ERISA]," *id.* § 1135, and the Secretary has long issued regulations and non-regulatory guidance informing fiduciaries of their responsibilities, *see, e.g., Prudence and Loyalty in Selecting Plan Investments and Exercising*

4

*Shareholder Rights*, 86 Fed. Reg. 57,272 (Oct. 14, 2021) (ESG Rule); *Terminated Vested Participants Project Defined Benefit Plans*, Compliance Assistance Release 2021-01 (Jan. 12, 2021); *Fee Disclosure Guidance*, Field Assistance Bulletin No. 2012-02R (July 30, 2012).

## II.    Factual Background

Digital assets or cryptocurrencies are virtual currencies that exist outside the ordinary tender issued by sovereign states. *See* Compl. ¶ 27, ECF No. 1; Exec. Order No. 14067, *Ensuring Responsible Development of Digital Assets*, 87 Fed. Reg. 14143, 14151 (Mar. 9, 2022) (Cryptocurrency Executive Order). While relatively new, "non-state issued digital assets reached a combined market capitalization of $3 trillion" in November 2021, "up from approximately $14 billion in early November 2016." Cryptocurrency Executive Order, 87 Fed. Reg. at 14143. The rapid rise of cryptocurrencies and digital asset trading platforms creates significant risk for consumers and the financial system. *Id.* at 14143.

In March 2022, President Biden issued Executive Order No. 14067. This Executive Order acknowledges certain inherent risks with this emergent asset class, sets government objectives to address the potential benefits and downsides of cryptocurrencies, and directs various agencies to take certain actions. For example, the Executive Order identifies "protect[ing] consumers, investors, and businesses in the United States" as the first policy objective. *Id.* at 14143. And it notes that "[t]he rise in use of digital assets, and differences across communities, may also present disparate financial risk to less informed market participants or exacerbate inequities." *Id.* at 14147.

Consistent with the Executive Order's focus on protecting consumers and investors and in response to firms marketing cryptocurrency as potential investment options for

401(k) plans, the Department's Employee Benefits Security Administration (EBSA) issued the Release on March 10, 2022. The Release "cautions plan fiduciaries to exercise extreme care before they consider adding a cryptocurrency option to a 401(k) plan's investment menus for plan participants." Ex. A at 1. It notes that fiduciaries have a duty of prudence and that, with respect to a defined-contribution plan, that duty requires "responsible fiduciaries" "to ensure the prudence of the options" on the investment menu "on an ongoing basis." *Id.*

EBSA explained that it has "serious concerns about the prudence of a fiduciary's decision to expose a 401(k) plan's participants to direct investments in cryptocurrencies, or other products whose value is tied to cryptocurrencies." *Id.* Among the specific concerns that it identified were cryptocurrencies' "[e]xtreme volatility" "due to the many uncertainties associated with valuing these assets, speculative conduct, the amount of fictitious trading reported, [and] widely published incidents of theft and fraud." *Id.* at 2. The Release went on to note that cryptocurrencies' novelty presents a "challenge for plan participants to make informed investment decisions" due to the "hype" surrounding them and limited "appreciation of the risks the investments pose to their retirement investments." *Id.* Further, EBSA expressed concern that, because "[c]ryptocurrencies are not held like traditional plan assets in trust or custodial accounts," there are likely to be custodial and recordkeeping issues on top of issues with valuing digital assets properly. *Id.* Finally, the Release observed that the "[r]ules and regulations governing the cryptocurrency markets may be evolving, and some market participants may be operating outside of existing regulatory frameworks or not complying with them." *Id.* at 3.

In light of these concerns, the Release explained that "EBSA expects to conduct an investigative program aimed at plans that offer participant investments in cryptocurrencies and related products, and to take appropriate action to protect the interests of plan participants and beneficiaries with respect to these investments." *Id.* EBSA remarked that "plan fiduciaries responsible for overseeing such investment options or allowing such investment options through brokerage windows should expect to be questioned about how they can square their actions with their duties of prudence and loyalty in light of the risks described above." *Id.*

### III.   Procedural History

On June 2, 2022, ForUsAll filed its complaint challenging the Release under the APA, 5 U.S.C. §§ 500-706. *See* Compl. The complaint alleges that ForUsAll "provides administrative and other services to retirement plans" and that it "was the first company to announce that it would make cryptocurrency available to 401(k) plan participants through a self-directed window." *Id.* ¶ 11. Further, it alleges that a number of plans "had already agreed to add cryptocurrency through ForUsAll's program," but following issuance of the Release, "approximately one-third of the plans ForUsAll has discussed the matter with have indicated that, despite their interest in including cryptocurrency, they do not intend to proceed at this time in light of Defendants' enforcement threats." *Id.* ¶ 50. ForUsAll accordingly claims that it "has been and continues to be directly damaged by Defendants' actions …, and participants' access to cryptocurrency has been and continues to be improperly impeded by Defendants' actions." *Id.*

7

ForUsAll brings two APA claims in an effort to remedy this purported injury. First, ForUsAll alleges that the Department violated 5 U.S.C. § 553 by issuing the Release without undertaking notice and comment rulemaking. Compl. ¶ 52. Second, ForUsAll alleges that the Department acted arbitrarily and capriciously and in excess of statutory authority, in violation of 5 U.S.C. § 706, by engaging in "rushed decision-making," "rel[ying] on inaccurate and outdated information and irrational assumptions," and "fail[ing] to incorporate relevant information and the views of relevant stakeholders" including those of the President. Compl. ¶ 57. Additionally, ForUsAll alleges that the Release "misstates the applicable standard of care" for plan fiduciaries, overstates the duties a fiduciary owes in the context of a brokerage window, exhibits a bias against cryptocurrency, and "improperly threatens to open investigations of and impose costs on plans and fiduciaries who take lawful action." *Id.* ¶¶ 58-61.

Based on these two claims, the complaint asks the Court to declare that the Release violates the APA, vacate and set aside the Release, enjoin the Department from "implementing, applying, or taking any action under, based on, or in furtherance of the Release, anywhere within [the Department's] jurisdiction," and declare that the Department's "investigatory authority is limited to investigating violations of Title I of ERISA, and may not be used … to seek adherence to substantive rules that it has not set forth in regulatory guidance." *Id.* ¶ 63.

### **LEGAL STANDARD**[1]

---

[1] Defendants respectfully move the Court to waive Local Civil Rule 7(n)'s requirements with respect to the administrative record. The Department maintains that the Release

"When analyzing a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), '[t]he court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct." *Citizens for Responsibility & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 132 (D.D.C. 2018).

A Rule 12(b)(1) motion to dismiss for "lack of subject-matter jurisdiction" challenges the Court's ability to hear the claim. "To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims." *Walsh v. Comey*, 118 F. Supp. 3d 22, 25 (D.D.C. 2015). "When reviewing a challenge pursuant to Rule 12(b)(1), the court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Sandoval v. Dep't of Justice*, 322 F. Supp. 3d 101, 104 (D.D.C. 2018).

"To survive a 12(b)(6) motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ramirez v. Blinken*, --- F. Supp. 3d ---, 2022 WL 1795080, at *4 (D.D.C. Mar. 22, 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In

---

does not constitute a final agency action and, as a result, that there is no administrative record, *cf. Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans' Affairs*, 842 F. Supp. 127, 130 (D.D.C. 2012) (noting that absent final agency action, there is no demarcation of the limits of the record). None of Defendants' arguments in this motion, moreover, require consultation of the record. In these circumstances, Courts in this District routinely waive Rule 7(n)'s requirements. *See, e.g.*, *Connecticut v. Dep't of Interior*, 344 F. Supp. 279, 294 (D.D.C. 2018) (collecting cases).

addition to the allegations within the four corners of the complaint, the Court may consider 'documents attached thereto or incorporated therein, and matters of which it may take judicial notice.'" *Id.*

## ARGUMENT

### I.  FORUSALL LACKS STANDING TO ASSERT ITS CLAIMS.

Plaintiffs invoking the jurisdiction of the federal courts must establish the "irreducible constitutional minimum of standing," which has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs first "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560 (internal citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* at 560-61 (cleaned up). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.*

In this case, ForUsAll has not pleaded facts establishing that it has standing to challenge the Release, nor will it be able to prove that it has standing. The only purported injury that ForUsAll identifies in its pleading is a potential loss of business: "one-third of the plans [with which] ForUsAll has discussed" adding cryptocurrency as an investment option, "despite their interest in including cryptocurrency, … do not intend to proceed at this time in light of Defendants' enforcement threats." Compl. ¶ 50. Even assuming that

10

this *speculative* loss constitutes an injury in fact (which is dubious), ForUsAll fails to allege facts establishing the other two standing elements. On causation, ForUsAll's own allegations make clear that its purported loss of business is due to the decisions of third parties—some of the plans for which ForUsAll desires to provide services—not because the Release requires ForUsAll to change its behavior. And ForUsAll does not plead sufficient facts to demonstrate that the Release was even a substantial factor in those third parties' decisions. On redressability, ForUsAll fails to allege sufficient facts showing that its requested relief, if granted, would remedy the claimed harms. There is no dispute that, independent of the Release, the Department can investigate plan fiduciaries' actions, including the offering of cryptocurrency investment options, and initiate appropriate enforcement actions. ForUsAll is merely speculating that an order invalidating the Release would have any impact on these third parties' decisions not to offer ForUsAll's cryptocurrency investment options. This case should therefore be dismissed for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### A. ForUsAll has failed to demonstrate a causal connection between its alleged injury and the challenged Release.

ForUsAll's asserted loss of business cannot be fairly traced to the Release. The complaint does not assert that the Release itself precludes ForUsAll from engaging in any business transactions or otherwise directly regulates the company. ForUsAll instead alleges that its loss of business is due to third parties' decisions, which it claims are the result of unspecified "enforcement threats" on the part of Defendants—not even

11

necessarily the Release. This causal chain is too speculative and attenuated to satisfy the second prong of the standing inquiry.

Article III's "case or controversy" limitation "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *see Allen v. Wright*, 468 U.S. 737, n.19 (1984) (noting that the "fairly traceable" component "examines the causal connection between the assertedly unlawful conduct and the alleged injury"). When the causal connection between the government's action and the claimed injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," a plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation." *Lujan*, 504 U.S. at 562 (internal citations omitted). Indeed, "[t]he facts alleged must show that the agency action is at least a substantial factor motivating the third parties' actions against [the plaintiff]." *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987). The burden is greater where a plaintiff's causal chain includes more "uncertain" or "speculative" links. *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.D.C. 1996) (en banc).

ForUsAll has failed to carry its burden of demonstrating the second standing element—causal connection—for at least two reasons. First, the complaint alleges that the cause of its injury is that third parties elected not to use ForUsAll based on unspecified enforcement threats. *See* Compl. ¶ 50. Injuries that '"result[] from the independent action

of some third party not before the court' [are] not sufficient." *Black v. LaHood*, 882 F. Supp. 2d 98, 104 (D.D.C. 2012) (quoting *Allen*, 468 U.S. at 751). There is no allegation, for instance, that the Release or the Department more generally has directly precluded the company from offering its services to anyone or entering into any specific business relationship. *Cf. Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006). Nor is there an allegation that the Release forbids any plan from contracting with ForUsAll. Indeed, the complaint acknowledges that numerous plans decided to include ForUsAll's cryptocurrency services among their menu of investment options after the Release was issued and without Department interference. Compl. ¶ 50. That other plans exercised their discretion differently is not fairly traceable to the Department, and yet, ForUsAll's claim is that some plans' reactions to the Release—not the Release itself—is sufficient to establish causation. *Id.* That tenuous link is insufficient because, by the complaint's own terms, ForUsAll's injury is not "fairly traceable" to the *defendants'* conduct. *See, e.g.*, *Jones v. La. State Bar Ass'n*, 738 F. Supp. 2d 74, 79-80 (D.D.C. 2010) (dismissing complaint because injury was not fairly traceable to defendants but to Congress).

Second, even if these third-party plans' involvement does not break the causal chain on its own, ForUsAll has failed to allege any basis for concluding that the Release was a substantial motivating factor in the third-party plans' actions giving rise to a causal connection sufficient to establish standing. The complaint attributes the third-party plans' decisions to "Defendants' [alleged] enforcement threats." Compl. ¶ 50. But it is unclear what role, if any, *the Release*—as opposed to plan fiduciaries' interpretation of the

Release, their consideration of their duties following the Release, other Departmental statements identified in the complaint, the plans' risk tolerance, or something else entirely—played in these plans' change of course. ForUsAll has the burden of building that connection in its causal chain, and it has failed to do so.

This lack of clarity is particularly problematic here given that the Release does not purport to have legal effect on its own or seek to change the duty of prudence enshrined in ERISA. That the Release may have brought the concerns of the Department to plan fiduciaries' attention, and that some plans as a result of their own internal fiduciary review or risk tolerance decided not to include ForUsAll's cryptocurrency options on their plan menus, does not make the Release a substantial factor in ForUsAll's claimed injury. Moreover, the standards of care and prudence, as found in ERISA, were created by Congress; nothing in a guidance document from the Department reminding fiduciaries of those standards changes them. *Cf. Black*, 882 F. Supp. 2d at 105-06. Nor does ForUsAll allege that the Department has subsequently engaged in any actual investigation against ForUsAll or the third parties relating to the concerns in the Release. Without such allegations, ForUsAll's standing claim is speculative, and there is no basis to conclude that these third-party actions are attributable to the Release and Defendants to an extent necessary to justify standing. *See, e.g., E. Ky. Welfare*, 426 U.S. at 43-46; *Cmty. for Creative Non-Violence*, 814 F.2d at 669; *Jones*, 738 F. Supp. 2d at 80.

**B. ForUsAll has failed to demonstrate that invalidation of the Release would remedy its purported injury.**

ForUsAll lacks standing for a separate and independent reason: it has failed to allege facts showing the third standing element—redressability. This element "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon*, 94 F.3d at 663-64 (footnote omitted). Here, ForUsAll has requested multiple forms of relief, *see* Compl. ¶ 63, but it has not given any reason for the Court to conclude that any of them would cause the third-party plans to reverse their decision regarding ForUsAll's cryptocurrency options.

First, ForUsAll seeks a declaration that the Release was issued in contravention of the APA and vacatur of the Release. *Id.* Compl. ¶ 63(a)-(b). But as explained above, ForUsAll has not pleaded or established that the Release was a substantial factor in the third-party plans choosing not to do business with ForUsAll. *See* Part I.A, *supra*. Causation and redressability are sometimes considered "two sides of a causation coin," *Black*, 882 F. Supp. 2d at 106, and just as ForUsAll has failed to show the Release drove the third-party plans' decisions, it has also failed to allege sufficient facts demonstrating that vacatur of the Release would likely lead to a reversal of those decisions.

Additionally, even if the Release were set aside, any enforcement actions—threatened or otherwise—could still be brought to effectuate statutorily-imposed fiduciary duties. *See* 29 U.S.C. § 1104(a)(1). Simply put, the Release has no legal force in and of itself. *See* Part II, *infra*. At most, it reveals the Department's thinking regarding various considerations concerning the duty of prudence's interaction with

cryptocurrency investment options. But there is no suggestion, nor could there be a valid one, that somehow plan fiduciaries' actions with respect to cryptocurrency are not covered by the duty of prudence or that the Department is barred from investigating or bring enforcement actions against fiduciaries who violate their duties in connection with cryptocurrency investment options. ERISA itself provides the Department with authority to take action, *see, e.g.*, 29 U.S.C. §§ 1131-1132, 1134, and if the Release were vacated, or never existed in the first place, that would remain unchanged—as would plan participants' authority to bring civil actions based on violations of the duty of prudence. *See* 29 U.S.C. § 1132(a)(1)-(2); *cf. County of Delaware v. Dep't of Transp.*, 554 F.3d 143, 149-50 (D.C. Cir. 2009) (holding there was no standing where overturning agency action would not redress the alleged harm). To the extent that ForUsAll wishes the Department had a different conception of the duty of prudence, the Court lacks the authority to direct the Department to take a particular interpretation of the duty of prudence or any other statutory provision. *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 477, 488-89 (1923) (courts "do not possess" authority "to assume a position of authority over the governmental acts of another and coequal department"). There is thus no basis to conclude that ForUsAll's main claims for relief would alter the third-party plans' decisions in any way.

Second, and relatedly, ForUsAll's request for an injunction barring the Department and its instrumentalities from "implementing, applying, or taking action under, based on, or in furtherance of the Release" also would not remedy ForUsAll's purported injury. Compl. ¶ 63(c). As just noted and discussed in more detail below, the Release does not alter any person's or entity's rights or responsibilities. The statutory

16

duty of prudence would serve as the basis for any investigation or enforcement action—not the Release—and thus any injunction directed at actions based on the Release would not have an appreciable impact on the third-party plans or anyone else. There is thus no basis to conclude that ForUsAll's requested injunction would address its claimed injury.

Third, a declaration that the Department's investigatory authority "is limited to investigating violations of Title I of ERISA," Compl. ¶ 63(c), in this situation, merely restates reality. Plan fiduciaries' ERISA duties, 29 U.S.C. § 1104(a), and the Department's authority to investigate and bring enforcement actions concerning the violation of such duties, *see id.* §§ 1132, 1134, fall within Title I of ERISA. *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004). It is difficult to see how reaffirming that the Department has authority to bring the investigations and enforcement actions that purportedly drove the third-party plans not to engage with ForUsAll would lead to a reversal of the plans' decision.[2]

At bottom, because any investigation or enforcement action regarding the violation of ERISA's trust-like fiduciary duties would be premised on the Department's statutory authorities and not the Release, ForUsAll has failed to allege any basis for

---

[2] ForUsAll also requests a declaration that the Department's investigatory authority "may not be used" to "harass[] or intimidat[e] individuals, impos[e] costs on individuals for taking lawful action, or otherwise us[ed] … to seek adherence to substantive rules that it has not set forth in regulatory guidance." Compl. ¶ 63(c). Given that ForUsAll's complaint is devoid of allegations that the Department has initiated any investigation—let alone that any investigatory powers have been abused—it is unclear how this requested relief relates to ForUsAll's claims at all. Moreover, ForUsAll's request that the Department issue "regulatory guidance" before initiating investigations appears to be in direct conflict with its claim that Department lacks the authority to issue the Release, which is "regulatory guidance."

concluding that its requested relief would remedy its purported injury. ForUsAll has failed to allege facts that would establish redressability, and accordingly, the complaint should be dismissed for lack of standing.

## II.     THE RELEASE DOES NOT CONSTITUTE FINAL AGENCY ACTION.

Under the APA, federal courts may review only "final agency action[s]." 5 U.S.C. § 704. Because the Release is not a final agency action, the complaint should be dismissed for failure to state a valid claim. *See* Fed. R. Civ. P. 12(b)(6).[3]

The Supreme Court has determined that "[a]s a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted).

### A. The Release does not represent the consummation of the Department's decisionmaking process.

"The consummation prong of the finality inquiry requires [the Court] to determine 'whether an action is properly attributable to the agency itself and represents the culmination of that agency's consideration of an issue,' or is, instead, 'only the ruling of a subordinate official, or tentative.'" *Nat. Resources Def. Council v. Wheeler*, 955 F.3d 68, 78

---

[3] While some circuits treat the "final agency action" requirement as jurisdictional, *see, e.g.*, *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007), the D.C. Circuit has held that "the finality requirement [i]s not jurisdictional," *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011), and thus appropriately addressed under Rule 12(b)(6).

(D.C. Cir. 2020). Unlike situations where the agency decision maker has "arrived at a definitive position on the issue," *DRG Funding Corp. v. Sec. of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (quoting *Williamson Cty. Reg. Planning Comm''n v. Hamilton Bank*, 473 U.S. 172, 193 (1985)), the Release represents a first, provisional step in the Department's actions concerning the offering of cryptocurrency investment options on 401(k) plans' menu of investment options.

By its own terms, the Release contemplates further action on the subject by the Department. For example, while the Release expresses that the "Department has serious concerns about the prudence of a fiduciary's decision to expose a 401(k) plan's participants to direct investments in cryptocurrencies, or other products whose value is tied to cryptocurrencies," Ex. A at 1, it does not determine under which conditions the duty would be breached. *Cf. Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 636 (D.C. Cir. 2019) (concluding a memorandum represented consummation of agency process where it stated "only permissible interpretation of the statute" in question (emphasis omitted)). The Release similarly identifies a number of risks that the Department and other agencies have identified with cryptocurrency, but it does not purport to direct fiduciaries—or the Department—on how to weigh those risks versus any benefits. *Cf. id.* And while the Release indicates that the Department "expects" fiduciaries "to take appropriate actions to protect the interests of plan participants and beneficiaries," it states only that "EBSA expects to conduct an investigative program"—not that it has determined fiduciaries must not offer cryptocurrency investment options in any or all circumstances or that any fiduciary that decides to offer cryptocurrency options under any circumstances will be

investigated. Ex. A at 3; *cf. U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599-600 (2016) (discussing decision reached *after* fact-finding process); *DRG Funding Corp.*, 76 F.3d at 1215 (concluding that agency action was not consummation of decisionmaking process where it expressly contemplated further agency decisionmaking).

Moreover, the Release bears few of the hallmarks of a final agency decision. It was not issued in the Secretary's name nor published in the Federal Register. *Cf. Nat. Resources Def. Council*, 955 F.3d at 78. While the Department has engaged with a variety of stakeholders following issuance of the Release, including ForUsAll, *see, e.g.*, Compl. ¶¶ 42, 47, 49, the Release was not issued after a formalized fact-finding process into any particular plan's offerings, *cf. Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) (finding first *Bennett* prong satisfied where draft guidance was circulated years before final guidance); *see also Hawkes Co.*, 578 U.S. at 599-600. Indeed, the Release does not even purport to render a decision—on the breadth of the statute, on particular industry practices, or on disputes of fact. The Release merely expresses the Department's concerns, which necessarily must be addressed in the context of specific facts and circumstances before there would be the consummation of the agency's decisionmaking process.

**B. The Release does not give rise to direct and appreciable legal consequences.**

Even if the Release represented the consummation of the Department's decisionmaking process (and it does not), it would not constitute final agency action because it does not "give[] rise to direct and appreciable legal consequences." *Hawkes Co.*,

578 U.S. at 598. The Release merely restates well-established law and neither binds plan fiduciaries nor the Department in tangible ways.

Determining whether an agency action meets this second *Bennett* prong requires the Court to engage in a "pragmatic" inquiry. *Sierra Club v. EPA*, 955 F.3d 56, 62 (D.C. Cir. 2020). In deciding whether an agency action meets this prong, the D.C. Circuit "has considered factors including: (1) 'the actual legal effect (or lack thereof) of the agency action in question on regulated entities'; (2) 'the agency's characterization of the guidance'; and (3) 'whether the agency has applied the guidance as if it were binding on regulated parties.'" *Id.* (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014)); *see also Valero Energy Corp. v. EPA*, 927 F.3d 532, 536-39 (D.C. Cir. 2019) (similar); *Cal. Cmtys*, 934 F.3d at 638 (considering an agency memorandum did not meet this prong because "(1) neither EPA nor regulated sources can rely on it as independently authoritative in any proceeding"; (2) "state permitting authorities face no penalty or liability of any sort in ignoring it"; and (3) "state permitting authorities and regulatory beneficiaries have clear statutory avenues by which to challenge a permitting decision adopting the reasoning of the … [m]emo"). In this case, these factors indicate that the Release does not create direct legal consequences.

First, the Release itself does not purport to create direct legal consequences for plan fiduciaries. It does not "command," "require[]," "order[]," or "dictate[.]" *Appalachian Power*, 208 F.3d at 1023. Despite ForUsAll's claims that the Release adopts a more stringent standard of care for plan fiduciaries, *see* Compl. ¶ 58, the Release merely repeats binding case law interpreting plan fiduciaries' duty of prudence, *see* Ex. A at 1 &

21

n.2 (citing *Hughes*, 142 S. Ct. at 742), and reminds fiduciaries that they must abide by this duty. It does not indicate that the Department will judge plan fiduciaries by anything other than the well-worn standard embodied in the duty of prudence. And such restatements of settled interpretations are unreviewable as a matter of law. *See, e.g.*, *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (holding that a letter that restates an agency interpretation and "tread[s] no new ground" is not final agency action). Further, to the extent that ForUsAll takes issue with the Department's reminder or its listing of risks accompanying investments in cryptocurrency, these statements do not command anyone to do anything in any particular circumstance, *see Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2006). Put another way, they impose no new obligations, prohibitions, or restrictions. *See Cal. Cmtys.*, 934 F.3d at 638.

Second, neither the Release nor the Department in its statements accompanying the Release have indicated that the Department intended the release to create or change fiduciaries' obligations under ERISA. *See Valero Energy Corp.*, 927 F.3d at 536-37. The Release itself expresses the Department's concerns regarding 401(k) plans offering cryptocurrency investment options and states that the Department intends to initiate an "investigative program." Ex. A at 3. Nowhere does the Release prohibit the offering of cryptocurrency investment options. And the Department has not stated anything different. Indeed, the complaint purports to quote a senior Department official as stating that the Department didn't "impos[e] th[e] obligation" that the Release's critics allege, but rather reminded fiduciaries that "[t]hey need to make sure they're looking out for plan participants," Compl. ¶ 43—which is exactly what the duties of loyalty and

prudence require, *see* 29 U.S.C. § 1104(a). In that sense, the Release mirrors the EPA document in *Valero* that was held not to be a final agency action. *See* 927 F.3d at 537.

Third, there is no allegation that the Department has or will apply the Release as if it were binding on plan fiduciaries or the Department. Indeed, the Release does not resolve whether or under what circumstances offering cryptocurrency investment options represents a breach of the duty of prudence. Plan fiduciaries remain free to conduct themselves in accordance with the long-established duty of prudence, including with respect to brokerage windows, and the Release expressly contemplates that the Department would conduct plan-specific investigations to gain an understanding of the particular context before making any allegation of imprudence. Ex. A at 3. Moreover, nothing in the Release suggests that the Department decisionmaker overseeing a potential investigation or enforcement action has any less discretion to judge whether a breach of fiduciary duty occurred than before the Department published the Release. *See Sierra Club*, 955 F.3d at 64. It does not create the risk that a plan fiduciary acting contrary to the Release risks increased civil or criminal liability than before the Release was published. *See Hawkes Co.*, 578 U.S. at 600. The Release, put simply, does not bind the Department or regulated entities going forward. That the Release does not repeat boilerplate language that it is not intended to represent final agency action or have the force of law (see Compl. ¶ 40) is meaningless. *See, e.g., Appalachian Power*, 208 F.3d at 1023.

*      *      *

In summary, the Release does not represent the culmination of the Department's decisionmaking regarding 401(k) plans offering cryptocurrency investment options, the

duty of prudence, or whether a particular plan's offerings represent a breach of fiduciary duty. Nor does the Release create direct and immediate legal consequences for regulated parties or the Department. Plan fiduciaries remain free to structure 401(k) plans however they see fit so long as their actions comport with the statutory duty of prudence, and the Department decisionmakers remain free to pursue investigations or entertain enforcement actions in exactly the same way they could prior to the Release's publication. For these reasons, neither *Bennett* prong is satisfied by the Release, and therefore, the Release is not a final agency action. ForUsAll's claims should accordingly be dismissed.

### III.   THE RELEASE IS NOT A SUBSTANTIVE RULE REQUIRING NOTICE AND COMMENT.

If the Court agrees that ForUsAll lacks standing or that the Release does not represent final agency action, it need not proceed further. However, independent of the foregoing, Count One should be dismissed at a minimum because the Release—even under ForUsAll's allegations—did not require notice and comment because it is an interpretative rule.

The APA's notice-and-comment requirements do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Defining "interpretative rule" precisely can be fraught, but "the critical feature of [them] is that "they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015). Interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Id.* In evaluating whether a rule is legislative or interpretative in nature, courts "look to the

rule's 'language' and 'ask whether the agency intended to speak with the force of law,' including 'whether the agency has published the rule in the Code of Federal Regulations and whether it explicitly invoked its general legislative authority.'" *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 407 (D.C. Cir. 2020).

For many of the reasons listed above, the Release—to the extent it is a final agency action at all and not just a general policy statement—is an interpretive rule that does not require notice and comment; it is not a legislative rule. The language of the Release does not create new substantive obligations for regulated entities; to the extent it offers definitive statements regarding a fiduciary's duties to plan participants, it merely offers the Department's interpretation of the duty of prudence with respect to cryptocurrency investment options—a hallmark of interpretative rules. *See, e.g., Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) ("an interpretive rule [is] 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers'").

Furthermore, there is no allegation that the Department has taken actions following the Release's publication to suggest that it has the force of law. ForUsAll does not allege that the Release was published in the Code of Federal Regulations or that it is scheduled to be. Similarly, there is no allegation that the Department has relied upon the Release in initiating investigations or in moving forward with any enforcement actions. Rather, ForUsAll's complaint recites examples of Department personnel making statements suggesting that, in fact, the Release—if anything—is an interpretative rule. *See, e.g.,* Compl. ¶¶ 43 (reciting statements of Acting Assistant Secretary Khawar and Deputy Assistant Secretary Hauser).

25

Because the Release—to the extent the Court concludes it is final agency action—is nothing more than an interpretative rule, Count One alleging that the Release should be vacated for failing to go through notice and comment is meritless. Agencies are not required to submit interpretative rules to notice and comment, and thus, Count One should be dismissed.

## <u>CONCLUSION</u>

For the reasons above, this case should be dismissed for lack of subject-matter jurisdiction or for failure to state a claim.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

*/s/ Christopher A. Eiswerth*
CHRISTOPHER A. EISWERTH
D.C. Bar No. 1029490
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 12310
Washington, DC 20005
Tel: (202) 305-0568
Email: christopher.a.eiswerth@usdoj.gov

*Counsel for Defendants*